**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NICHOLAS HOMES, INC, U.S. LAND DEVELOPMENT LLC, U.S. BUILDERS LLC, MICHAEL NICHOLAS, PRISCILLA NICHOLAS, MICHAEL NICHOLAS AND PRISCILLA NICHOLAS AS TRUSTEES OF THE AMENDED AND RESTATED NICHOLAS FAMILY TRUST, DATED SEPTEMBER 28, 1998,<br><br>Plaintiffs,<br><br>vs.<br><br>M&I MARSHALL & ILSLEY BANK, N.A.<br><br>Defendant. | No. CV 09-2079-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendant's Motion to Dismiss Counts 5, 6, and 7 (Doc. # 12), and Plaintiff US Development Land, LLC's Motion to Refer Case to Bankruptcy Court (Doc. # 13). For the reasons that follow, the Court grants in part and denies in part Defendant's motion to dismiss, and denies Plaintiff's motion to transfer.

**I. BACKGROUND**

Plaintiffs are borrowers and guarantors of various loans made by Defendant. Eventually, Plaintiffs defaulted on certain of these loans. Plaintiffs then entered into forbearance discussions with Defendant. During the course of the forbearance discussions,

Plaintiffs provided budgetary and project information concerning the real property that secured the loans. Also during the course of the forbearance discussions, Defendant placed the loans for sale to third parties. Upon learning of Defendant's placing the loans for sale to third parties, Plaintiffs offered to purchase the loans, and negotiations concerning the purchase of the loans–in addition to the continuing negotiations concerning the forbearance of the loans–ensued.

Plaintiffs allege that they entered into an agreement with Defendant to purchase the loans for $35 Million. Shortly after the agreement was allegedly entered into, Defendant sold the loans to Dolphin Quantum, LLC ("Quantum"). Throughout the various negotiations with Defendant, and at Defendant's request, Plaintiffs repeatedly provided Defendant with financial information about Plaintiffs.

Plaintiffs filed the present action in Maricopa County Superior Court, and Defendant timely removed to this Court. Plaintiffs allege eight counts of action in their complaint: 1) breach of contract; 2) breach of covenant of good faith and fair dealing; 3) intentional misrepresentation/omission; 4) negligent misrepresentation/negligent omission; 5) wrongful disclosure of confidential financial information; 6) consumer fraud; 7) prima facie tort; 8) punitive damages. Defendants now move to dismiss counts five, six, and seven under Federal Rules of Civil Procedure 12(b)(6).

**II.     ANALYSIS**

*A.     Motion to Dismiss*

1.     LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Although a complaint attacked for failure to state a claim does not need detailed factual allegations, the pleader's obligation to provide the grounds for relief requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted). The factual allegations of the complaint must be sufficient to raise a right to relief above a speculative level. *Id*. Rule 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id*. (citing 5 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE §1202, pp. 94, 95 (3d ed. 2004)).

Rule 8's pleading standard demands more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint that offers nothing more than naked assertions will not suffice. To survive a motion to dismiss, a complaint must contain sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 129 S.Ct. at 1949. Facial plausibility exists if the pleader pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Plausibility does not equal "probability," but plausibility requires more than a sheer possibility that a defendant has acted unlawfully. *Id*. "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (citing *Twombly*, 550 U.S. at 557).

In deciding a motion to dismiss under Rule 12(b)(6), the Court must construe the facts alleged in the complaint in the light most favorable to the drafter of the complaint and the Court must accept all well-pleaded factual allegations as true. *See Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not have to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

2. COUNT FIVE

In count five of their complaint, Plaintiffs allege wrongful disclosure of confidential financial information when Defendant disclosed confidential financial information to

Quantum without Plaintiffs' consent or knowledge. Plaintiffs allege that the disclosure of confidential financial information to Quantum was "a violation of a duty owed to Plaintiffs under both law and contract," and "a violation of 15 U.S.C. § 6801, *et. seq.*," commonly known as the Gramm-Leitch-Bliley Act ("GLBA") (Doc. # 1, Ex. 1, p. 9, ¶¶ 72-73.) Section 6801(a) of the GLBA provides that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).

Defendants argue that count five fails to state a claim because the GLBA does not provide for a private cause of action. The Court agrees, that to the extent count five is premised upon the GLBA for a private cause of action, Plaintiffs' claim fails. Congress expressly stated who may enforce the GLBA: "This subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law . . . ." 15 U.S.C. § 6805(a). Congress did not provide for a private cause of action under the GLBA, and Plaintiff has failed to cite any court recognizing such a private cause of action. Indeed, the overwhelming authority affirms that there is no private cause of action under the GLBA. *See, e.g., Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956 (8th Cir. 2007) (stating that "[n]o private right of action exists for an alleged violation of the GLBA," and collecting cases affirming this principle). Hence, to the extent Plaintiffs' claims under count five rely upon the GLBA for a private cause of action, Plaintiffs' count five fails.

Nevertheless, Plaintiffs argue that they are not precluded from alleging a common law cause of action for Defendant's wrongful conduct under count five. The Court agrees that, although the GLBA does not provide for a private cause of action, it also does not preclude a common law cause of action. However, Plaintiffs have failed to demonstrate that such a common law cause of action exists in Arizona.

Plaintiffs do not cite any case in Arizona where the wrongful disclosure of confidential information by a bank or other lending institution gave rise to a viable claim.

- 4 -

Plaintiffs do, however, cite Indiana and Oklahoma state authorities in support of its theory. *See Indiana Nat'l Bank v. Chapman*, 482 N.E.2d 474 (Ind. Ct. App. 1985); *Djowharzedeh v. City Nat'l Bank*, 646 P.2d 616 (Okla. Civ. App. 1982). However, these cases involve banks either wrongfully disclosing information provided in a loan application or disclosing information resulting from a bank-depositor relationship. These cases do not involve a debtor-creditor relationship in which the plaintiff defaulted on his or her obligation owed to a bank, and then the bank disclosed otherwise confidential information in an effort to sale the plaintiff's obligation to a third-party.

In fact, the current trend of cases appears to be the opposite: there is no duty of confidentiality in a debtor-creditor relationship, especially in the context of a debtor defaulting on his or her obligation owed to the bank, and the bank disclosing the confidential information to third-parties in an effort to sale the debtor's obligation. *See, e.g., Hopewell Enters., Inc. v. Trustmark Nat'l Bank*, 680 So.2d 812, 818 (Miss. 1996) (holding that no duty of confidentiality exists in the bank-borrower relationship); *Schoneweis v. Dando*, 435 N.W.2d 666, 673 (Neb. 1989) (holding that "the statements related solely to that debtor-creditor relationship," and that the court was "not persuaded that under such circumstances [the bank] owed [plaintiff] any duty of confidentiality.").

The Court finds Plaintiffs' cited authority inapposite to support a viable common law theory that Defendant violated a duty of confidentiality when it disclosed Plaintiffs' confidential financial information to Quantum in an effort to sell Plaintiffs' loans. The Court's conclusion is supported by the fact that in Arizona, absent any special agreement to the contrary, there is no fiduciary relationship between a bank and its customer. *McAlister v. Citibank*, 829 P.2d 1253, 1258 (Ariz. Ct. App. 1992). The Court finds that Plaintiffs have failed to state a claim under count five.

3.  COUNT SIX

In count six of their complaint, Plaintiffs allege that Defendant violated the Arizona Consumer Fraud Act ("ACFA"), A.R.S. § 44-1521 *et. seq.*, when it sold the loans in question to Quantum. "The [ACFA] is a broadly drafted remedial provision designed to eliminate

unlawful practices in merchant-consumer transactions." *Madsen v. W. Am. Mortgage Co.*, 694 P.2d 1228, 1232 (Ariz. Ct. App. 1985). A private right of action exists for breach of the ACFA. *Sellinger v. Freeway Mobile Home Sales, Inc.,* 521 P.2d 1119, 1122 (1974).

In order to prevail on a claim under the ACFA, "a plaintiff must show a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and consequent and proximate injury resulting from the promise." *Kuehn v. Stanley*, 129, 91 P.3d 346, 351 (Ariz. Ct. App. 2004). Defendants argue that Plaintiffs' claims under count six should be dismissed because Plaintiffs "do not claim to have been buyers, nor do they assert that they were the target of any deceptive advertising." (Doc. # 20 at p. 6.) The Court disagrees.

Plaintiffs allege in their complaint that they entered into negotiations with Defendant for both the forbearance of their debt, as well as the purchase of their debt in satisfaction for the money owed. Plaintiffs proceeded with the negotiations under the belief that Defendant was negotiating in good faith for either the forbearance or sale of their debt. Plaintiffs allege that they eventually entered into an enforceable contract for the purchase of their debt, only to find out that Defendant had sold the loans to Quantum. From these allegations, Plaintiffs have satisfactorily alleged that they were buyers of the loans in question, and that they were the target of Defendant's deceptive advertising.

Defendant cites this Court to *Sutter Home Winery, Inc. v. Vintage Selections, Ltd.*, 971 F.2d 401, 407 (9th Cir. 1992), in support of its proposition that Plaintiffs' count six must be dismissed for a failure to state a claim. In *Sutter Home Winery*, a wine distributor brought suit under the ACFA alleging that a wine maker violated the ACFA when it secretly sold to a different distributor the exclusive rights to distribute its wine. 971 F.2d at 407. The entirety of the Court's discussion of the ACFA in *Sutter Home Winery* took place in a single paragraph, and the Court expressly found that the plaintiff was not a buyer under the act or the recipient of deceptive advertising. As discussed above, Plaintiffs in this case allege that an enforceable contract was entered into for the sale of their loans, and that this contract was

induced by Defendant's allegedly deceptive advertising. The Court finds *Sutter Home Winery* to be distinguishable.

Defendant next relies upon *Enyart v. Transamerica Insurance Co.*, 985 P.2d 556, 562-63 (Ariz. Ct. App. 1998), for the assertion that Plaintiffs' claims under count six must be dismissed. *Enyart*, however, involved a settlement agreement, which the court expressly held was not a "sale" within the meaning of the ACFA. 985 P.2d at 563. Plaintiffs' allegations under count six, however, do not involve a settlement, but a contract for the purchase of their loans.[1] This distinction is especially true given that Arizona courts have found that money constitutes "merchandise" under the ACFA; that a loan constitutes a "sale" under the ACFA; and that negotiations surrounding a loan constitute an "advertisement" under the ACFA. *Villegas v. Transamerica Fin. Servs., Inc.*, 708 P.2d 781, 783 (Ariz. Ct. App. 1985). In light of the fact that money constitutes merchandise and a loan constitutes a sale under the ACFA, Plaintiffs' state a plausible claim for relief under Rule 12(b)(6) by alleging that Defendant committed deceptive practices during the sale of the loans in question.

4. COUNT SEVEN

In count seven of their complaint, Plaintiffs allege that Defendant committed a prima facie tort by selling the loans to Quantum. However, as Defendant argues and Plaintiffs recognize, no Arizona court has ever adopted the prima facie tort doctrine as a viable cause of action in Arizona. A number of Arizona courts have had occasion to reference the prima facie tort doctrine–which finds its genesis in Restatement (Second) of Torts § 870–but none have explicitly adopted the doctrine. *See, e.g., State v. Bolt*, 689 P.2d 519, 527 (Ariz. 1984); *Rutledge v. Phoenix Newspapers, Inc.*, 715 P.2d 1243, 1246 (Ariz. Ct. App. 1986), *overruled*

---

[1] The Court agrees that if Plaintiffs allegations under count six were solely for violations of the ACFA that occurred during the forbearance negotiations, then this would be a closer question as to whether a forbearance agreement constitutes a settlement within the meaning of *Enyart*. However, Plaintiffs' allegations clearly pertain to the sale of the loans, and the alleged contract entered into by the parties for the sale of the loans.

*on other grounds by Godbehere v. Phoenix Newspapers, Inc.*, 783 P.2d 781 (1989); *Lips v. Scottsdale Healthcare Corp.*, 214 P.3d 434, 440 n. 8 (Ariz. Ct. App. 2009). This Court, a federal court sitting in diversity, is loathe to create a new tort when Arizona state courts have refrained from doing so.

Moreover, the Court is guided by the wisdom of the *Rutledge* court: "The [prima facie tort] has not been adopted in Arizona and even in those jurisdictions where it is recognized, it is inapplicable where plaintiff can have adequate redress by any of the forms of action known and practiced." 715 P.2d at 1246 (quotations omitted). Plaintiffs allege multiple causes of action in their complaint, and such other causes of action adequately redress the alleged wrongs committed by Defendant. Hence, even if the Court were inclined to blaze a new Arizona tort trail, which it is not, Plaintiffs have adequate remedies in their other causes of action.

*B.     Motion to Transfer*

On October 6, 2009, Plaintiff U.S. Development Land, LLC ("USDL") filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Arizona. Plaintiff USDL now seeks to have this case transferred to the Bankruptcy Court. Plaintiff argues that this case is related to the bankruptcy case because this action will have an impact on the administration of Plaintiff USDL's estate.

Defendant asserts that in deciding whether to refer this case to the Bankruptcy Court, this Court must engage in a three-part analysis. In reply, Plaintiff USDL does not dispute the applicability of this test, only Defendant's characterization of the first element. The test is as follows:

> In deciding whether to refer this case, the Court must first determine (1) whether this action is sufficiently "related to" the bankruptcy cases to permit a referral under § 157(a), and (2) whether and to what extent a referral is permissible at all in light of the plaintiffs' jury demand. If, after these issues are resolved, the Court finds that it has the discretion to grant defendants' motion, it must still decide whether a referral would be of practical benefit to the administration of the action.

*Travelers Ins. Co. v. Goldberg*, 135 B.R. 788, 790 (D. Md. 1992). The Court need not dwell on the extent to which the present action is related to Plaintiff USDL's bankruptcy proceeding, because referral would be inappropriate in view of Plaintiffs' demand for a jury trial, and because referral would be of little practical benefit.

Plaintiff USDL does not dispute that the present action involves exclusively non-core claims. Because this action involves non-core claims and because the parties cannot agree on a final adjudication of the non-core claims by the Bankruptcy Court, the Bankruptcy Court is precluded from conducting a jury trial. *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990) ("We agree with these courts and conclude that bankruptcy courts cannot conduct jury trials on noncore matters, where the parties have not consented.").

Plaintiff USDL, nevertheless, argues that the Court could refer this action to the Bankruptcy Court for all pretrial matter and motions, only to be referred back to this Court for Plaintiffs' requested jury trial. While Plaintiff's assertion might be correct–the Bankruptcy Court is not forbidden from handling all pretrial matters–the Court finds that such a referral would be of little practical benefit. The Court has already held a Rule 16 scheduling conference on this case. Furthermore, through this Order, the Court has already ruled on Defendant's motion to dismiss. Hence, the Court is familiar with the parties and the claims asserted by Plaintiffs. The Court sees little value in referring this matter to the Bankruptcy Court, which would require the Bankruptcy Court to further expend its time and judicial resources in arriving at the same understanding and familiarity of Plaintiffs' non-core claims as this Court, only to refer the action back to this Court for a jury trial. The Court denies Plaintiff USDL's request to refer this case to the Bankruptcy Court.

### III.  CONCLUSION

The Court finds that Plaintiffs' have failed in counts five and seven to state a claim upon which relief may be granted. As such, the Court grants Defendant's motion to dismiss on counts five and seven of Plaintiffs' complaint. However, the Court finds that Plaintiffs' have stated a viable claim for relief in count six for the purpose of surviving a Rule 12(b)(6) motion. Lastly, the Court denies Plaintiff USDL's motion to refer this case to the

Bankruptcy Court because the Bankruptcy Court cannot conduct a jury trial and enter final judgment on Plaintiffs' claims, and because the Court finds that referring this case to the Bankruptcy Court would not be of any practical value.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Dismiss Counts 5, 6, and 7 (Doc. # 12) is granted in part and denied in part. The Court grants Defendant's motion as it pertains to counts five and seven, but denies Defendant's motion as it pertains to count six.

**IT IS FURTHER ORDERED** that pursuant to Rule 15(a) and Plaintiffs' request, Plaintiffs may file an amended complaint in an attempt to more fully state counts five and seven. If Plaintiffs choose to file an amended complaint, they shall file their amended complaint on or before May 17, 2010.

**IT IS FINALLY ORDERED** that Plaintiff US Development Land, LLC's Motion to Refer Case to Bankruptcy Court (Doc. # 13) is denied.

DATED this 30th day of April, 2010.

James A. Teilborg
United States District Judge